**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. 08-161-JBC**

**APRIL L. HOUSTON,**                                                                      **PLAINTIFF,**

**V.**                               **MEMORANDUM OPINION AND ORDER**

**MICHAEL ASTRUE,**
**SOCIAL SECURITY ADMINISTRATION,**                              **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \* \***

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB") (R. 7, 8).  The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

I.      **Overview of the Process**

Judicial review of the decision of an Administrative Law Judge ("ALJ") to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards.  *Brainard v. Sec'y of Health & Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).  "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Cutlip v. Sec'y Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).  The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility.  *See id.*  Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

## II.    The ALJ's Determination

At the time of the alleged disability onset date, the plaintiff was a thirty-three-year-old female.  AR 25.  She alleges disability beginning on April 1, 2004, due to a variety of physical impairments. AR 19.  The plaintiff filed her claim for

2

DIB on January 26, 2005.  AR 19.  The claim was denied initially on May 31, 2005, and again upon reconsideration on September 26, 2005.  *Id.*  After a hearing on November 29, 2006, Administrative Law Judge ("ALJ") Roger L. Reynolds determined that the plaintiff did not suffer from a disability as defined by the Social Security Act. AR 19, 26.

At Step 1, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged disability onset date.  AR 21.  At Step 2, the ALJ found that the plaintiff had severe impairments of low back pain secondary to degenerative disc disease, morbid obesity, multiple myalgias, and non-insulin-dependent diabetes mellitus.  AR 21.  The ALJ then determined that the plaintiff's impairments did not meet or equal a listing in the Listing of Impairments at Step 3. AR 23.

To assess the plaintiff's claim at Steps 4 and 5, the ALJ found that the plaintiff had a residual functional capacity ("RFC") to perform light and sedentary work with no climbing of ropes, ladders or scaffolds; no work at heights or around industrial hazards or concentrated vibration; a sit/stand option with no prolonged standing or walking in excess of thirty minutes; no extreme temperatures, wetness, or humidity; no operation of foot-pedal controls; no crawling or kneeling; and only occasional bending, twisting, stooping, crouching, or climbing of stairs or ramps. AR 23.  At Step 4, the ALJ found the plaintiff unable to  perform her past relevant work as a certified nursing assistant.  AR 25.  Finally, at Step 5 the ALJ determined

3

that due to the plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that the plaintiff can perform.  AR 25. The ALJ denied the plaintiff's claim for DIB on December 15, 2006 (AR 26), and the plaintiff appealed to the Appeals Council (AR 10-15).  The Appeals Council denied her request for review on January 29, 2008 (AR 5), and she commenced this action.

## III.    Legal Analysis

The plaintiff contends that the ALJ's conclusion that she is not disabled is erroneous because he posed an inaccurate hypothetical question to the Vocation Expert ("VE") and because his ultimate conclusion of "no disability" is based on the VE's testimony.  She maintains that the hypothetical question is inaccurate because the ALJ's RFC determination, which he used to construct his hypothetical question, is inaccurate.  Specifically, the plaintiff argues that in determining her RFC, the ALJ improperly rejected the opinion of Dr. Mohammad Shahzad, the plaintiff's treating physician.[1]

The opinions of a treating physician are entitled to significant deference.

---

[1] Dr. Shahzad opined that Houston was unable to walk swiftly; needed a cane or other assistive device to stand/walk; sometimes needed to lie down at unpredictable intervals during an eight-hour work shift; could sit and stand for less than two hours at a time; could occasionally lift up to 10 pounds but never 20 pounds; could occasionally climb and balance but could never stoop, crouch, kneel, or crawl; had limited ability to push/pull but no impairments in ability to reach, handle, feel, hear, or speak; and could use foot controls using the right foot but not the left.  AR 204-05.

4

*See, e.g., Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004).  An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2).  If the opinion of a treating source is not accorded controlling weight, the ALJ must consider factors such as the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the support for the opinion, the consistency of the opinion with the record as a whole, and specialization of the source in determining the weight to give the opinion.  *Wilson*, 378 F.3d at 544.  An ALJ may, however, reject the opinion of a treating physician when that opinion is not sufficiently supported by medical findings.  *Walters v. Comm'r*, 127 F.3d 525, 530 (6th Cir. 1997); *Cutlip v. Sec'y of Health and Human Servs,* 25 F.3d 284, 287 (6th Cir. 1994) (when substantial medical evidence exists to the contrary, the ALJ is not bound by the treating physician's opinion); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).

The ALJ explained that he rejected Dr. Shahzad's opinion that Houston could not do even sedentary work because the ALJ found that "[t]here is no evidence of demonstrable change in the claimant's physical condition from January 5, 2006 when Dr. Shahzad released the claimant to light work activity."  A 24.[2]  The ALJ

---

[2]Light work is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and

5

then referenced specifics of Dr. Shahzad's treatment notes to support his

conclusion that Dr. Shahzad's assessment of June 27, 2006, was not supported by

his own medical findings and was inconsistent with the opinions of the state

agency doctors.

Dr. Shahzad's treatment notes do not support his finding of severe physical

limitations.  On February 22, 2005, Dr. Shahzad concluded that Houston could

return to work "without any restriction."  AR 215.  On January 5, 2006, Dr.

Shahzad noted that Houston had "chronic back pain" and reported "that she is not

able to lift heavy weights."  AR 208.  But although he concluded that Houston

should not lift more than twenty pounds and should not bend frequently, he made

no assessments of severe limitations.  AR 208.

Houston argues that the ALJ erred in looking to medical findings made by Dr.

Shahzad prior to her car accident on February 2, 2006, to support his rejection of

Dr. Shahzad's opinion.[3]  However, medical records from after the car accident also

do not support the severe limitations assessed by Dr. Shahzad on June 27, 2006;

rather, they suggest that, contrary to the plaintiff's implications, the car accident

--------

"requires a good deal of walking or standing, or . . . involves sitting most of the
time with some pushing and pulling of arm or leg controls."  20 C.F.R. §
404.1567(b).  Sedentary work "involves lifting no more than 10 pounds at a time
and occasionally lifting or carrying articles like docket files, ledgers, and small tools"
and involves sitting, "[a]lthough . . . a certain amount of walking and standing is
often necessary in carrying out job duties."  *Id.* § 404.1567(a).

[3]Importantly, however, the date of the car accident is not the plaintiff's alleged date
of onset of disability.

6

did not exacerbate her existing conditions.  The February 3, 2006, notes by Dr.

Shahzad show that Houston had normal motor strength in both upper and lower

extremities and normal gait, although some diminished reflexes in her left ankle and

knee.  AR 207.  Dr. Shahzad then conducted an MRI and concluded on February 7,

2006, that although there was some degenerative disc disease, there was no spinal

stenosis and her gait was normal.  AR 206.  He prescribed physical therapy and

made no notations of severe physical limitations.  AR 206.  On March 26, 2006,

another MRI was performed, which showed "the lumbar spine basically unchanged

since January 2005," the date of a prior MRI.  AR 197.  Dr. Shahzad again

concluded on March 31, 2006, that Houston would benefit from physical therapy

and noted that "[t]he patient claims that . . . she is not able to return to work as

she is not able to lift."  AR 195.[4]  Dr. Shahzad made no notation that he concurred

with her self-assessment.  Nowhere in his treatment notes does Dr. Shahzad ever

make findings that support his June 27, 2006, opinion that the plaintiff was

severely limited in her physical abilities.

    Rather than relying on Dr. Shahzad's assessment, the ALJ placed significant

weight on the opinions of Dr. Kevin Moreman and Dr. John Rawlings.  These

doctors made findings inconsistent with Dr. Shahzad's conclusions.  Dr. Moreman,

a consultative examiner, concluded after examining the plaintiff that she had only

---

[4]Dr. Shahzad notes in his June 27, 2006, assessment that Houston was following his medical advice.  *See* AR 204.  The record does not include any information on Houston's engaging in physical therapy.

mild functional limitations.  He determined that Houston had some "mild limitations regarding her ability to lift and carry" but opined that she could "frequently carry 10-15 pounds."  AR 137.  He further found that "standing or walking should be limited to six hours in an eight hour day with interruptions every 30 minutes" but that her ability to sit was not impaired.  *Id.*  He found no other limitations.[5]  *See* AR 135-37.

The ALJ's assessment is also consistent with the assessment of the state agency physician, Dr. Rawlings.[6]  Dr. Rawlings's assessment was largely consistent with that of Dr. Moreman.  *See* AR 147-53.  He added, however, that in addition to being able to lift ten pounds frequently, she could lift twenty pounds occasionally.  AR 147.  He also concluded that she was able to climb ladders, ropes, or scaffolds only occasionally and also found some environmental limitations.[7]  AR 148, 150.

---

[5]That is, she could "frequently climb, balance, stoop, crouch, kneel and crawl" and that "reaching, handling, feeling, pushing, pulling, seeing, hearing and speaking are not limited."  AR 137.  Dr. Moreman also found no environmental restrictions.  *Id.*

[6]A second assessment was performed by another medical reviewer.  AR 138-45. The court is unable to read the reviewer's signature and neither party referenced this assessment in its motion.  The assessment is entirely consistent with that performed by Dr. Rawlings, however, so it only adds further support to the ALJ's decision.

[7]Dr. Rawlings concluded that Houston could occasionally lift twenty pounds, could frequently lift ten pounds, could stand and/or walk for about six hours in an eight-hour workday, could sit with normal breaks for about six hours in an eight-hour workday, had unlimited ability to push and/or pull, could climb ladders, rope, or scaffold only occasionally but otherwise had no postural limitations.  AR 147-48.

The ALJ incorporated these limitations into his determination of Houston's RFC.[8]
*See Cutlip,* 25 F.3d at 287 (finding that substantial evidence supported ALJ's decision to reject treating physician's opinion, including findings by consultive examination).

Though a treating physician's opinions are ordinarily given significant deference, the court finds that the ALJ did not err in rejecting Dr. Shahzad's assessment on the ground that it was inconsistent with his own medical records and with the remainder of the medical evidence in the record.[9]

**IV. Conclusion**

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (R.

---

[8]Houston argues that the ALJ improperly rejected the opinions of Drs. Moreman and Rawlings.  She points in particular to their assessments of her ability to lift and carry.  However, it is not clear to the court that the ALJ did reject those opinions.  As noted above, Dr. Moreman found that she could carry ten to fifteen pounds frequently and made no statement that she could never left twenty pounds, and Dr. Rawlings found that she could lift ten pounds frequently and twenty pounds occasionally.  The ALJ's assessment that she was capable of doing light work is consistent with these findings.  See *supra* note 2 for the definition of "light work."  Houston also maintains that the ALJ "improperly omitted Dr. Moreman's finding that the claimant would be limited to six hours of sitting in an eight hour work day with interruptions every 30 minutes."  R. 7, p. 9.  The plaintiff misstates Dr. Moreman's conclusions.  As indicated above, Dr. Moreman found Houston's *standing* should be limited to six hours in an eight-hour day but that *sitting* was not impaired.  *See* AR 137. These arguments therefore are without merit.

[9]Because the hypothetical question posed by the ALJ to the VE was an accurate statement of the RFC that the ALJ determined, he did not err in his reliance on the VE's testimony.

9

8) is **GRANTED**.

      **IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment

(R. 7) is **DENIED**.

      Signed on  April 16, 2009

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY